# Staunton.

## DIXON v. PADDOCK.

### September 14, 1905.

1. PARTNERSHIP—*Dissolution—Settling Partner—Fiduciary Relation—Fraud.*—
The active partner in winding up and settling the affairs of a dissolved
firm who, for liberal compensation, has assumed the duty of realizing
the best price obtainable for firm property occupies such a relation of
trust and confidence toward his confiding partner that he must show
beyond all reasonable doubt the fairness and honesty of his transactions
with such partner relative to the firm assets. He cannot buy from his
confiding partner at a reduced price his interest in firm property, upon
which he has given an option, or which he has sold or contracted to
sell to another at a much larger sum, without first making to him a
full disclosure of the facts. Nor are the rights of the parties in any
way affected by the fact that he agreed with the proposed purchaser to
observe secrecy as to the contract.

2. PARTNERSHIP—*Dissolution—Accounting—Case in Judgment.*—A partner who
has purchased an engine and rented it to the firm at a fixed rent per
month cannot, upon dissolution, charge the engine to the firm at an
advance price over costs. Upon the evidence in this cause, the engine
should be charged to the firm at cost, and the partner who received
the rent should be made to account to his co-partner for one-half
thereof.

3. PARTNERSHIP—*Accounting—Private Expense of One Partner.*—A partner
who conducts a private and competing business of his own through the
general offices of the firm, is rightly accountable for an equitable pro-
portion of the expenses of such offices. He cannot, as settling partner
of the dissolved firm, charge the whole of such expenses to the firm.

4. EQUITY—*Commissioner's Report— Questions of Fact.*—This court will not
disturb the finding of a commissioner on items of accounting between
partners on pure questions of fact, where it appears that the commis-
sioner has made a careful and painstaking investigation of every item
of dispute, and his findings are well justified by the evidence.

Appeal from a decree in chancery of the Circuit Court of Wise county. Decree in favor of complainant. Defendant appeals.

*Affirmed.*

The opinion states the case.

*E. S. Finney,* for the appellant.

*O. M. Vicars* and *Ayers & Fulton,* for the appellee.

HARRISON, J., delivered the opinion of the court.

By agreement in writing, dated April 1, 1899, John T. Dixon, the appellant, and F. S. Paddock, the appellee, formed a partnership under the firm name of "Dixon-Paddock Lumber Company," for the purpose of conducting a general lumber business, and, in connection therewith, acquiring the stock of the Gladeville Railroad Company, and equipping and operating the same.

The railroad mentioned was acquired, the purposes of the partnership carried out, and its business conducted until October 31, 1900, at which time, by an agreement in writing between the parties, the firm was dissolved. Under this agreement all of the partnership assets, with the exception of certain property then sold to the appellee, passed into the hands of the appellant, to be disposed of by him with a view to his settling up the business of the concern as expeditiously as possible; it being therein agreed that appellant should have until July 1, 1901, to close up the partnership business and make a settlement with appellee of all firm matters, except the Gladeville Railroad, provided that property should then remain unsold, it not being known at the time whether a satisfactory sale of the railroad could be made by July 1, 1901.

The dissolution contract of October 31, 1900, provided, among other things, that nothing contained therein should be

construed as in any manner impairing the rights and obligations of the parties under the partnership agreement of April 1, 1899, and that a settlement of the partnership business should be subject to that agreement.

In response to a proposition from appellant that he would take the Gladeville Railroad and equipment at the price of $18,000, appellee replied on June 13, 1901, in part, as follows: "If you will make me up a clear statement of the affairs of the Dixon-Paddock Lumber Co. and the Gladeville Railroad, together with an itemized statement of your account and my account; an itemized statement of the losses sustained by us, and an approximate statement of the amount, value, and location of the lumber on hand, I will name you a price that I would be willing to take provided you and Gen. Ayers do not trade."

In answer to this request for a statement, appellant wrote appellee June 15, 1901, in part, as follows: "Regarding making up a statement of the affairs of the Dixon-Paddock Lumber Co., am not in a position at this time to give you such a statement as you indicate. I, of course, expect to make up a statement the first of July as per our contract, which I perfer to do then instead of now." On the 9th of July, 1901, appellant furnished appellee with a statement of the partnership business. This statement was accepted by the appellee as an honest disclosure by the appellant of the affairs of the partnership which were in his hands to be wound up, and formed the basis of a settlement then made between the parties, and by which the appellee sold out his interest in the assets of the concern to the appellant.

The bills, original and amended, in this cause were filed by the appellee, alleging that he, relying upon the honesty and integrity of appellant, and believing that the statement or balance sheet mentioned was a true statement of the affairs of the partnership business, had sold his interest in the partnership assets to the appellant upon the basis of such statement. The bills

further charge that the complainant had subsequently discovered that the statement rendered by appellant, which formed the basis of their settlement, was not true, but that appellant had wrongfully and fraudulently concealed a number of important matters from appellee which should have entered into the settlement, and which would have produced a wholly different result greatly to the advantage of complainant. The prayer of these bills is that the sale made by complainant of his interest in the partnership assets to the appellant be declared to be fraudulent and void; that appellant be required to render a true and correct account of his dealings with the partnership assets, and that he be required to pay the complainant what shall appear to be justly due him upon a fair settlement of such accounts.

The allegations of these bills are denied by the answers thereto filed by the appellant.

The largest item of the statement rendered by appellant of his transaction with the partnership assets, which formed the basis of the sale by appellee, was a credit of $18,000, as the value of the Gladeville Railroad, which was to pass to the appellant as part of his purchase from the appellee. Before this sale of July 9, 1901, indeed at the time the letter of June 15, 1901, already mentioned, was written, appellant had entered into a contract in writing, in the name of the Dixon-Paddock Lumber Company, as party of the first part, agreeing to sell to George E. Manning, trustee, this railroad property at the net price of $33,000, and had received from Manning $1,000 in cash, on account of the purchase money, appropriating the same to his individual use. In October, $16,000, of this purchase money had been paid, and by the following January, $28,500 had been paid. No mention was made by appellant of the existence of this contract at the time he rendered the statement which formed the basis of his purchase of the half interest of appellee in this railroad property at $9,000.

As a general rule, he who alleges fraud must distinctly prove it. *Engleby* v. *Harvey*, 93 Va. 440, 25 S. E. 225. But it is

equally true that where a fiduciary or confidential relation exists between the parties to a transaction, the party who occupies the position of active confidence must show beyond all reasonable doubt the fairness and honesty of the transaction. Kerr on Fraud and Mistake, vol. 1, p. 386.

That the appellant occupied a relation of trust and confidence to the appellee with respect to the matter here inquired of, is fully established by the evidence. As the active partner in winding up and settling the affairs of the dissolved company, he had assumed the duty, no less obligatory than a fiduciary trust, of realizing from the common assets the best price obtainable for the benefit of himself and his confiding partner, and for this work he was allowed by the dissolution contract liberal compensation.

Appellant admits that he concealed from the appellee the contract he had with Manning, trustee, and undertakes to excuse his action in the matter upon the ground that it was an option contract and therefore without binding force, and that he had agreed with Manning that he would not disclose the fact that he held the option.

It is unnecessary to consider whether this Manning contract was an option, or a conditional sale. So far as the rights of the appellee are concerned, it is wholly immaterial whether the sale to Manning, trustee, was an option or an absolute sale, for in either event appellee was entitled to an equal interest with appellant in all benefits that were likely to accrue from the transaction. Nor is it a matter at all affecting the rights of appellees in the premises that appellant agreed with Manning, trustee, that he would observe secrecy as to the contract. No such agreement is to be found in the written memorandum between the parties, and if it were true that an oral understanding to that effect was had, it would be void as to appellee who was entitled to a full disclosure from appellant of all matters pertaining to their partnership interests. The concealment by the appellant of the Manning contract under which

he had then received $1,000 cash, and was to receive in addition thereto $32,000, and the purchase, under such circumstances, of the half interest of his partner in the railroad property at $9,000, was a fraud upon the appellee, and the appellant has been properly held liable to make good the loss thereby sustained.

We are further of opinion that there was no error in requiring appellant to account to appellee for the item of $746.18, growing out of his fraudulent misrepresentation with respect to the "Engine and Caboose."

It appears that appellant bought this engine and caboose for $2,350, for use on the Gladeville Railroad, and rented it to the partnership, as his private property, at $80.00 per month. In the statement rendered appellee as the basis of their settlement, appellant charges up this engine and caboose as a liability of the firm at $2,500, and requires his partner, who was ignorant of the facts, to account for it upon that basis, notwithstanding the fact that he had received from the firm $1,540 on account of rents for its use. The commissioner treated the engine and caboose as a liability of the partnership at $2,350, its actual cost, and required the appellant to refund to appellee his one-half interest in the rents which had been fraudulently appropriated by the appellant to himself. This was so manifestly proper that comment is unnecessary. The record discloses no justification for the course of appellant in treating this engine, etc., as an asset and liability of the partnership in the statement furnished by him to the appellee, and at the same time charging the firm with $1,540, for the use of it as his private property during the short time it was used by the firm.

We are further of opinion that there was no error in holding appellant liable to appellee for $938.63, on account of office expenses improperly charged by appellant to the Dixon-Paddock Lumber Co.

It appears that the general offices of the company were located at Ronceverte, West Virginia, and, as contemplated by the terms of the partnership, were under the control and manage-

ment of appellant.    Soon after the formation of the partner-
ship appellee, whose special duty it was to look after the out-
side work of the company, moved with his family to Wise
county, Va., where he might be conveniently located with re-
spect to the active operations of the company.    It further ap-
pears that appellant conducted a private and competing business
of his own, all of which was transacted through the general
offices of the Dixon-Paddock Lumber Company.    This private
enterprise amounted in volume to two-thirds of the business of
the office, while that of the parternship was only one-third.    Not-
withstanding appellant was appropriating to his private purposes
two-thirds of the benefit of these offices, he charged the Dixon-
Paddock Lumber Company with, practically, the entire cost of
salaries and all other office expenses.

The contested item now under consideration grows out of the
action of the commissioner in attempting to correct this in-
justice by requiring appellant to account for an equitable pro-
portion of these expenses.

The finding of the commissioner in this matter has done
no injustice to appellant, and the exception thereto was properly
overruled.

Appellant contends that the court erred in confirming the
report of Commissioner Peary charging him with several other
minor items, and the appellee assigns several cross-errors involv-
ing the correctness of various findings of the commissioner.
These several disputed items involved matters of accounting
and questions of fact merely.    There is no occasion to enter
upon a detailed statement of the history of such items.    An
able commissioner has filed an unusually clear and satisfactory
report, involving a careful and painstaking investigation of every
item now in dispute; and a laborious consideration of the mass
of evidence accompanying that report shows that the commis-
sioner was well justified and fully sustained in his findings.
It is clear that no error was committed to the prejudice of
appellant, whose conduct in this matter was not such as to
commend him to a court of equity.

Upon the whole case, the decrees complained of must be affirmed.

*Affirmed.*